# R. B. Phillips et al. *versus* The Allegheny Valley Railroad Company.

1. Where an action against an administrator for a debt of his decedent, brought within five years from his death, is prosecuted to judgment within ten years from the death of said decedent, the suit is " duly prosecuted " within the meaning of the Act of February 24, 1834, (P. L. 77) ; and on the trial of a scire facias against the heirs the question of " due prosecution " cannot be left to the jury.

2. A, the president of a railroad company, died April 14th, 1874. The company, as a creditor, brought assumpsit against his administrator, December 20th, 1875, and recovered judgment January 8th, 1883. On January 10th, 1883, the company issued a scire facias against A's. heirs on said judgment. The heirs contended that because the judgment against the administrator was not obtained until seven years after the suit was brought, it was not duly prosecuted within the meaning of the Act of February 24th, 1834, and that the question of due prosecution must be left to the jury. The court, however, directed the jury that the suit had been duly prosecuted, under the Act, and a verdict was rendered in favor of the company, upon which judgment against the heirs was entered March 28th, 1884.

*Held*, that the judgment was binding upon the heirs.

3. The defendants offered evidence to show that several items of the account upon which judgment was obtained against the administrator, were erroneous, and asked the court to rule that if such evidence were believed by the jury, the burden was shifted to the company, to sustain its judgment by legal evidence.

*Held*, that such ruling was properly refused. The disproof of one, or several of such items could not affect the rest. Any discrepancies between the bill of particulars in the original suit and the evidence offered in support of it, were settled by the judgment in said suit.

4. Although the defendants were permitted to show by A.'s books certain errors in specific items going to make up the account on which the original suit was brought; yet *held*, that in the proceeding under the sci. fa. the books could not be received in evidence as a whole, and the said account re-stated from them.

[Phillips et al. v. Railroad Co.]

5. An exhibit which contains statements or items concerning which there has been no proof, cannot be sent out with the jury. But the statements concerning which there has been proof may be admitted in evidence.

6. Proof by the defendants as to A.'s private papers in the custody of the company, held not admissible in evidence, unless followed by proof of their relevancy to the case. A proceeding to compel their production was the proper remedy.

7. Under Rule 8. of the Courts of Common Pleas of Allegheny county, proof of set-off against a plaintiff, of which no notice is given in the affidavit of defence, is inadmissible.

8. It is incumbent on a defendant offering evidence in the nature of a set-off, to exhibit in his offer every fact necessary to establish the relevancy of the testimony proposed to be given.

9. The defendants offered in evidence numerous checks drawn by A. to the treasurer of the company: But the treasurer having already testified that A. had received credit for the items represented by the checks, there being no other explanatory testimony offered respecting them: Held, that they were properly excluded.

10. Defendants offered in evidence certain book entries showing an account between A. and one T. setting forth the purchase of land from T. by A. to be held by the latter for the company, and payments by A. for said land; also entries showing that certain bonds of the company were transferred to A. in payment for advances made by him on account of said land; this to show that certain items in the account on which the recovery against A.'s administrator was had were improperly charged against A.

Held, that in the absence of any proof that A. conveyed the land to the company, he was properly charged in said account with the bonds which he had received to be applied in payment for said lands; and also that he might have been surcharged with the sums for which he had received credit as paid for the company on the purchase. The evidence offered was therefore inadmissible.

October 30th, 1884. Before MERCUR, C. J., GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

ERROR to the Court of Common Pleas No. 1, of *Allegheny county:* Of October and November Term, 1884, No. 76.

Scire facias, issued by the Allegheny Valley Railroad Company, against R. P. Phillips and others, heirs of William Phillips, deceased, upon a judgment previously obtained against the administrators of said decedent.

William Phillips, president of the Allegheny Valley Railroad Co., died on April 14th, 1874. As a creditor of the decedent, the said company brought an action of assumpsit against his administrator on December 20th, 1875, and recovered judgment January 8th, 1883. On January 10th, 1883, the company issued this scire facias, on said judgment, against the decedent's heirs.

On the trial, before COLLIER, J., the defendants offered in evidence exhibits Nos. 1 and 2, which were papers prepared by counsel to show that the Auditor's report or statement of account between Wm. Phillips and the Allegheny Valley R. R. Co., upon which recovery was had in the suit against the administrators, was erroneous and included items which should not have been included. Objected that in the absence of evidence as to the incorrectness of the items specified, the exhibits were incompetent. The court admitted all items which were professed to be incorrect, but excluded the remainder of the exhibits. Exceptions. (19th and 20th assignments of error.)

Defendants offered in evidence the ledger and journal of the plaintiff company from 1870 to 1875, to show that the defendant in the original action was not credited with many items for which he was entitled to credit. Offer refused. Exception. (18th assignment of error.)

Defendants offered certain entries in the plaintiff company's ledger (which had already been proved), dated December 31st, 1874, in order to show, in connection with other testimony, that the books of the company were erroneously changed on that day and certain items transferred to the individual account of William Phillips, which should have been charged to him as president. Objected to; excluded. Exception. (21st assignment of error.)

Defendants offered witnesses to prove that William Phillips had a number of private personal papers in the company's office which the latter afterwards took possession of; also to prove the financial condition of the road when Phillips became president. Objected to; excluded. Exceptions. (22d, 23d and 24th assignments of error.)

Defendants proposed to show by the clerk of Lyon, Shorb & Co., of which firm William Phillips was a member, that certain negotiable paper was drawn by the Allegheny Valley Railroad Company, indorsed by Phillips for the benefit of the company, and also indorsed by Lyon, Shorb & Co. as accommodation indorsers; that said firm was obliged to take up the notes; that on a settlement between it and the railroad company the former received income bonds on account of which there was a balance of $96,000 charged to the private account of Phillips and paid by him to Lyon, Shorb & Co. This for the purpose of showing that William Phillips was entitled to a credit as against the Allegheny Valley Railroad Co. which had not been allowed in this account or taken into the settlement. This to be followed by evidence showing that the matter of the settling of the affairs of the firm of Lyon, Shorb & Co. was the subject of a bill in equity, and the

facts proposed to be shown were adjudicated in that case; that this balance was charged up to the interest of William Phillips in the firm of Lyon, Shorb & Co. Objected to; evidence excluded. Exception. (25th and 26th assignments of error.)

Defendants offered in evidence "minute of December 8th, 1871, on page 14 of the minute book, showing a contract between the Allegheny Valley Railroad Co. and the Pennsylvania Railroad Co. and J. S. Morgan & Co., by which a certain amount of the Allegheny Valley Railroad bonds were exchanged for Philadelphia and Erie bonds, and those Philadelphia and Erie bonds placed in the hands of J. S. Morgan & Co. for sale on account of the Allegheny Valley Railroad Co., to wit: Bonds to the amount of $5,000,000. This for the purpose of showing what disposition was made of the Allegheny Valley Railroad bonds while William Phillips was president, and to rebut the allegations or presumption that he retained or appropriated any of them to his own use, to be followed by calling on plaintiff to produce the accounts of sale of the bonds or receipts for the sale of the bonds;" also various receipts from the treasurer of the Allegheny Valley Railroad Co. to William Phillips for certain bonds therein mentioned. Objected to; excluded. Exceptions. (27th, 31st, 32d and 33d assignments of error.)

Defendants offered to prove "that the books now in possession of the witness (J. B. Phillips) are the books of William Phillips, President of the Allegheny Valley Railroad Co., kept in the office of the company when he was President, under his direction, by his secretary or clerk, who has since died, and propose to offer them in evidence as transactions of the President with the company." Objection; offer refused. Exception. (28th assignment of error.)

Defendants' counsel offered to ask the following question: "State whether at your uncle's death, either in his safe, as President, or his box or private desk, or anywhere else, he had any bonds except the two spoken of?" Counsel stated that by this question they proposed to "show that amongst William Phillips's assets, coming into the hands of his administrator, there was never a single bond or coupon came into his possession except the two bonds and coupons which were surrendered." Objection; excluded. Exception.

They also in this connection made the following offer: To put in evidence "Exhibit No. 97, and also No. 97½, which is the account of Mr. Spencer, the Assistant Treasurer of the Pan Handle Railroad. This as bearing upon the question of the propriety of the large charge of missing coupons and cer-

tain coupons charged to William Phillips." Objection ; offer refused. Exception. (29th and 46th assignments of error.)

Defendants offered in evidence Exhibit No. 78, check of William Phillips on the Iron City National Bank to C. Reiter Bro. & Co. for $527.

Objected to, first, as incompetent and irrelevant ; second, because John Ballentine, Treasurer, testified that the said check was repaid by the Allegheny Valley Railroad Co., by an Allegheny Valley Railroad check, No. 344, said check representing a lumber bill. Objection sustained. Exception. (34th assignment of error.)

Defendants offered in evidence numerous checks drawn by William Phillips to John Ballentine, Treasurer of the company. Objected to, on the ground that there had been testimony to show that Phillips had received credit for the amounts mentioned in the checks. Objection sustained. Exception. (35th to 43d assignments of error.)

Defendants offered in evidence " Exhibit No. 19, being two receipts signed by William A. Tomlinson, Treasurer, given to William Phillips, the first of which appears to be a receipt for Pittsburgh, Cincinnati and St. Louis bonds received by the Treasurer from the President, one batch to be given to Michael Shall for cars, and the other for Jackson & Sharpe for cars." This is offered for the purpose of showing that William Phillips accounted for all the bonds of that class that came into his possession, and therefore it was error in the plaintiff to charge him in the Auditor's report and bill of particulars in evidence with coupons of these bonds missing.

Objected to, first, as incompetent and irrelevant. Second. The receipts upon their face import no liability on the part of the Allegheny Valley Railroad Co. to a credit to Phillips for the subject matter of the receipts. Objections sustained. Exception. (44th assignment of error.)

Defendants offered in evidence " entry on page 70, plaintiff's cash book ' B,' produced and identified by the witness, being entry under date of the 16th September, 1871 : ' Bills payable, note given William Phillips, dated September 16th, 1871, — months being for $40,000 borrowed for the Bennett's Branch Railroad; carried out, $41,152.26.' This is offered as general evidence to show that the account or bill of particulars as sued on is incorrect, according to the plaintiff's own books and papers, and not correctly stated in taking from the books as showing errors in the account." Objected to; excluded. Exception. (47th assignment of error.)

Defendants then made the following offer : " To put in evidence the entries upon pages 164 and 259 of journal ' A,' produced by plaintiff, being the same as testified to by John

Ballentine, the Treasurer, to wit: 'Sundries, William Phillips to Phillip Templeton for 129 acres and 61 perches of land situated in Pine township, Armstrong county, sold to said Phillips July 6th, 1866, $28,125. General expense for interest in adjustment of account for above purchase as settled October 13th, 1869, $489.65. Discount on mortgage bonds for discount on 16 bonds as per bill 10 per cent., $1,600.' 'Philip Templeton, Dr. to sundries, $30,214.65. To first mortgage bonds, eastern extension for 16 bonds $1,000 each, given in part settlement of account, $16,000. Bills payable William Phillips, note at three months from October 6th, 1869, $4,738.22. Do. do. four months, $4,738.22. Do. do. five months, $4,738.21. Carried out, $14,214.65.' On page 259 the following entry: "Real estate to William Phillips, $30,000 for 30 acres of land situate in Pine township, Armstrong county, Pa., held by him for the company, and to be conveyed by him when the proper survey is made. See agreement signed by William Phillips, on file with journal entry of this date, $30,000. Bills payable to William Phillips, $14,214.65 for account of following notes given by him to Phillip Templeton on October 6th, 1869, erroneously charged to his account on journal 'A,' page 164, he having assumed and paid the same at maturity, to wit: Note at three months from October 6th, 1869, for $4,738.22; at four months, $4,738.22; Do. five months, $4,738.21.' These are offered to show that the surcharge against William Phillips, appearing in plaintiff's statement of account, on which the judgment was recovered, of the item under date of 1875, for 16 mortgage bonds, Bennett's Branch, numbers 40 to 55 inclusive, with 1870 coupons attached on, October 19th, 1869, in settlement with P. Templeton for mortgage on 129 acres and 61 perches; said land bought from him by William Phillips July 6th, 1866, is an erroneous charge and surcharge, and also, when taken in connection with Exhibit No. 50, allowed to William Phillips in the settlement. Exhibit No. 25, and afterwards surcharged in this account as against him, was an erroneous charging of the account, and as to those items defendants are entitled to have them credited in this proceeding, and in connection with this offer Exhibit No. 50 is offered in evidence."

By the court: "What the defendants offer to prove is perfectly competent, and the only question is whether the entries offered do sustain the purpose they offer, and we think they do not; until the defendants show that the property was conveyed to plaintiff we cannot admit the evidence." Exception.

Defendants further offered in evidence "Exhibit headed 'Templeton tract of land,' being a printed copy of an agreement which it was agreed should be used in the absence of

the written copy which we have not got, for the purpose of showing that the whole of the Templeton tract was originally purchased for the Allegheny Valley Railroad Company, and by subsequent arrangements the said railroad took thirty acres of it, William Phillips took a portion of it, J. Edgar Thompson took a portion of it, Thos. A. Scott took a portion of it, and Dr. J. Pancoast took a portion of it." Objected to. Objection sustained. Exception. (48th, 49th and 50th assignments of error.)

Plaintiff asked the court to charge:

" 4. It was adjudicated in said judgment (against the administrator) that William Phillips was chargeable with the sums entered to his debit on the books of the Allegheny Valley Railroad Company subsequent to his death. The defendants have offered no evidence sufficient to impeach the judgment of this court as to the said items. The mere fact that the items were charged up to William Phillips upon the books of the company after his death is insufficient." Affirmed. (14th assignment of error.

Defendants submitted, inter alia, the following points:

1. " That although the judgment of the plaintiff against the administrator of William Phillips, deceased, is prima facie evidence for the plaintiff, yet if the defendants have introduced evidence which is believed by the jury, showing that said judgment is incorrect in many material items, then the burden of proof shifts and rests upon the plaintiff, and it becomes incumbent upon the plaintiff to sustain its judgment by proper legal evidence." Refused. (10th assignment of error.)

3. " That the settlement between William Phillips and the plaintiff, produced and proved by the plaintiff, shows that the plaintiff has no cause of action upon its bill of particulars filed by it, and are sufficient to overturn the prima facies of the judgment and to impose the burden of proof upon the plaintiff." Refused. (11th assignment of error.)

4. " If the jury believes from the evidence that after the death of William Phillips the books of the plaintiff company were altered by charging large sums of money to the private account of William Phillips, which sums were transferred from other accounts, and said alterations have not been satisfactorily accounted for, then in making up their verdict the jury have a right to take into account said alterations, and if they do not find the same sustained by satisfactory evidence, to reject all of the sums so transferred in making up their verdict." Refused. (12th assignment of error.)

7. " The plaintiff in order to charge the lands of the defendants descended to them from William Phillips, deceased,

was bound under the law to bring its action against the administrator of said decedent within five years from the death of said William Phillips, and to prosecute the same with due diligence to trial and judgment."

*Answer.* "This proposition is correct; but we instruct you that this has been done."

11. "That if the jury believe from the evidence that William Phillips died on the 14th day of April, 1874, and that an administrator was appointed on the 21st day of April, 1874, and that the plaintiff commenced its action against said administrator on the 20th day of December, 1875, but did not prosecute it to trial and judgment until the 8th day of January, 1883, a period of over seven years, then said suit was not 'duly prosecuted,' and the lien of the debt of the plaintiff as against the heirs of said William Phillips expired in five years from the death of said William Phillips." Refused.

12. "If the instructions above prayed for be refused, then the court is requested to charge : That if the jury find from the evidence that William Phillips died on the 14th day of April, 1874, that plaintiff brought suit against the administrator of said decedent on the 20th day of December, 1875, but did not prosecute the same to trial and final judgment until the 8th day of January, 1883, and from the evidence believe that said suit was not duly prosecuted, then their verdict must be in favor of the heirs of said Phillips, deceased." Refused.

The answers to said 7th, 11th and 12th points, and others to the same effect constituted the first nine assignments of error.

In the general charge, the court instructed the jury; referring to the defendants' offer of plaintiff's books in evidence, as per 18th assignment, as follows :

"It has been stated, gentlemen, by the learned counsel that there was some paper in evidence that showed a large item, and that your judgment should be for defendants. Well, gentlemen, I don't want a mis-trial of this case, and I therefore say to you there cannot be a verdict for defendants. It would be a violation of law, and if I did not say so I would violate my duty, and if you would find for defendants you would violate yours, because the necessary evidence is not here. The evidence does not go to that extent. The defendants have all the books here and may call your attention to the items and show you item by item this judgment is wrong, but the law will not permit the books to be thrown in to you when the judgment is prima facie, everything on the books, for you to re-state the account." (15th assignment of error.)

Plaintiff's counsel asked to have Exhibits Nos. 106 and 107,

to wit: a copy of a settlement between the Philadelphia and Erie Railroad Company and the Allegheny Valley Railroad Company; and the bank book of the latter company—go out with the jury. Objected to by defendants. Objection overruled. Exception. (17th assignment of error.)

Defendant's counsel asked to have Exhibits Nos. 1 and 2 (set out above in 19th and 20th assignments) go out with the jury. Objection by plaintiff. Objection sustained. (16th assignment of error.)

Verdict for plaintiff on the scire facias, December 17th, 1883, and judgment entered thereon March 28th, 1884. Whereupon the defendants took this writ, assigning for error the admission and rejection of evidence; the answers to points, and the general charge of the court, as above set out.

*John Barton* (with whom was *George Shiras, Jr., C. C. Dickey* and *W. C. Erskine*) for plaintiffs in error.

*Dalzell* (with whom was *Hampton*) for the defendants in error.

Mr. Justice GREEN delivered the opinion of the court January 5th, 1885.

The intestate, William Phillips, died on April 14th, 1874. The Allegheny Valley Railroad Co., a creditor, brought an action of assumpsit against his administrator on December 20th, 1875, and recovered judgment in the action on January 2d, 1883. On January 10th, 1883, a scire facias against the heirs was issued on the judgment, a verdict was obtained by the plaintiff on December 17th, 1883, and judgment was entered on the verdict on March 28th, 1884. It will be seen that the final judgment against the heirs was obtained before the expiration of ten years from the death of the intestate. It is not disputed, nor can it be, since the case of Hope *v.* Marshall, 15 Norris 395, that the judgment against the heirs was obtained within the time necessary to charge the land with the lien in the hands of the heirs. The proposition is not controverted by the learned counsel for the plaintiffs in error. They merely claim that because judgment was not obtained in the suit against the administrator until some seven years after the suit was brought, the action was not *duly prosecuted* within the meaning of the Act of February 24th, 1834. Practically they contend that the question of due prosecution was one of fact to be submitted to the jury, who would therefore be at liberty to decide against the plaintiff on that question, although his proceeding was in such condition that he was prepared to enter his judgment against the heirs within

the ten years from the death of the former owner.  We are
not referred to any authority holding such doctrine, and we
do not think it is the law.  The judgment in the action
against the administrator was obtained within five years after
the expiration of the statutory lien of five years after death
given to all debts, and the suit was brought during the cur-
rency of the first period of five years.  In the view of all the
authorities this was a sufficient compliance with the statutory
requirement of due prosecution.  To hold that the jury is to
judge at its own discretion whether a suit against the admin-
istrator has been duly prosecuted, would be to substitute a
wavering, uncertain standard of duty, depending upon the
caprice or whim of each jury charged with the trial of such
a cause, for what ought to be a definite, absolute rule appli-
cable to all alike.  Thus one jury might, if they chose, decide
that a delay of one year between the issuing of the writ and
the entry of judgment would be an undue prosecution with-
in the meaning of the Act, while another jury might hold
that a delay of ten years would not be too great.  We held
in Penn v. Hamilton, 2 W. 52, that if the action was prose-
cuted to judgment within five years after the determination
of the lien of the debt, it was duly prosecuted within the
meaning of the Act, and Chief Justice GIBSON said, speak-
ing of the continuance of the lien after judgment obtained
against the personal representative, " the period which the lien
shall be suffered to endure afterwards cannot be left to a jury,
under the circumstances, with either certainty or safety; it
must be a determinate one and measured by the court as a
conclusion of law.  But without resorting to parallel provi-
sions for cases standing in the same mischief, it will be impos-
sible to extract a definite rule from words of such indefinite
import as 'duly prosecuted.' "  In Corrigan's Est., 1 Norris
495, we held that under the Act of 1797 the mere bringing
of the suit against the personal representative of a decedent
within seven years after his death, continued the lien of the
debt for a period of twelve years from the time of his decease,
and that it is immaterial at what time within the seven years
the judgment was obtained, as the lien runs to the termina-
tion of the period of twelve years without a further proceed-
ing.  It was also held that the Act of 26th February, 1834,
merely changed the time of the first period from twelve years
to ten.  All this was repeated in Hope v. Marshall, *supra.*
In Maus v. Hummel, 1 Jones 228, COULTER, J., speaking
of the case of Penn v. Hamilton, said "the construction
given to the words 'duly prosecuted,' is that no matter at
what time within the seven years the suit was brought, it con-

tinued the lien for five years after the termination of the seven, although judgment was not obtained within the seven."

In the face of these decisions we do not see that there is any room for an allegation that the present claim was not duly prosecuted in the first action. If the mere bringing of the action against the personal representative, of itself continues the lien for the full term of ten years from the death of the decedent, it is immaterial at what time within the ten years the judgment in the first suit is obtained, so that the scire facias against the heirs is prosecuted in time to charge them. In any case, if the prosecution of the first suit is such that the plaintiff has been able to obtain his judgment against the personal representative, and also his judgment against the heirs, within the ten years, it cannot be said that the first suit has not been *duly* prosecuted, since the final judgment has been obtained within a period which is undoubtedly sufficient to bind the heirs. It can make no difference to them whether the first suit was prosecuted with greater or less despatch, in a case in which the lien has existed continuously from the impetration of the first writ, and the final judgment has been obtained before the expiration of the continued lien. The question whether if the second judgment were obtained after the second period of five years had expired, though the scire facias was issued within that period, the heirs would be bound is not before us and is not decided.

We are of opinion therefore that the first suit in this case was duly prosecuted within the meaning of the Act of 1834, and that it was the duty of the court below to so instruct the jury, and for that reason the first nine assignments of error are dismissed.

The *tenth assignment* is not sustained. This was a scire facias to revive against the heirs a judgment obtained against the administrator. The heirs were permitted to disprove any or all the items that went to make up the judgment, but the disproof of one or several of the items could not affect the others.

*Eleventh assignment.* The court certainly could not have affirmed the defendants' third point. The settlement was open to attack upon the same grounds that any settlement between parties may be impeached, such as fraud, accident or mistake, and had such testimony been offered it would doubtless have been received. Discrepancies between the bill of particulars in the original suit, and the evidence offered in support of it, were matters to be settled in that suit and were determined by the judgment. It is not easy to determine the precise application of the point to the facts of this case, but it seems to declare that a difference between a piece of testi-

mony offered in the first suit and the bill of particulars filed
in that suit destroys the prima facies of the judgment finally
obtained therein, and puts the plaintiff to original proof of all
the items of the claim. We cannot agree to this, and there-
fore dismiss the assignment.

*Twelfth assignment.* The defendants' fourth point simply
proposed to transfer the burden of proof from the defendants
to the plaintiff for the reason there stated, which we think
was insufficient. The matter had already been tried and
decided in the original action, and the defendants were not
denied in this suit the opportunity to show that there was
error in the items referred to.

The *thirteenth assignment* is practically a repetition of the
eleventh with a little more of detail, and is not sustained, for
the reasons stated in disposing of the eleventh assignment.

*Fourteenth assignment.* It is conceded that the first part of
the answer to the plaintiff's fourth point was correct. Excep-
tion is taken to that part of the point which declares there is
no evidence sufficient to impeach the judgment as to items
entered on the plaintiff's books after the death of William
Phillips. The only testimony we are referred to in this con-
nection is that which relates to the Templeton purchase. It
is true the court did leave this to the jury, and the defendants
had the benefit of a special consideration of that subject by
them. As we are of opinion that the court might properly
have taken this matter from the jury, for reasons hereafter
stated, the apparent error growing out of the inconsistency
between the answer to the point and the general charge as to
this matter becomes immaterial.

*Fifteenth assignment.* The obvious meaning of the part of
the charge covered by this assignment, is that there could not
be a verdict for the defendants, and that the whole of the
original case could not be re-tried by this jury merely upon
an examination of the books and without regard to the judg-
ment already obtained. The court said the defendants might
show errors in the items by the books, but could not receive
the books as a whole and simply re-state the account from
them. We see no error in this. The books were in court
open to inspection and examination and testimony as to items
was admitted. It was not, and is not, contended that the
court should have given a binding instruction to the jury to
render a verdict for the defendants, nor that it was error in
the court to say there must be a verdict for the plaintiff for
some amount.

*Sixteenth assignment.* The reason stated by the court below
for not allowing Exhibits 1 and 2 to be sent out with the jury,
to wit, that they contained items about which there was no

proof, was quite sufficient. Moreover the court offered to give the items as to which there was proof and have the evidence relating to them read over.

*Seventeenth assignment.* The refusal to send out Exhibits 1 and 2 is no reason for refusing to send out other exhibits if the latter were proper to be considered by the jury in their room. If they were not, the reasons for excluding them ought to appear.

*Eighteenth assignment.* The answer to the fifteenth assignment disposes of this. The books were not admissible in mass.

*Nineteenth and twentieth assignments.* The court admitted all the items in these papers professed to be incorrect, and the other items were not competent without some proof of their incorrectness.

*Twenty-first assignment.* In the absence of proof that these entries were not rightfully posted to the individual account of Phillips, they were not competent.

*Twenty-second and twenty-third assignments.* The court very properly excluded proof as to the private papers of Phillips in the custody of the plaintiff, unless followed by proof of their relevancy to this case. A proceeding to compel their production was the proper remedy.

*Twenty-fourth assignment.* We fail to see the relevancy of an offer to prove the financial condition of the company when Mr. Phillips went in.

*Twenty-fifth and twenty-sixth assignments:* These were offers to prove a set-off against the plaintiff of which no notice was given in the affidavit of defence, and they therefore appear to be inadmissible under the fourth section of Rule 8 of the court below. Irrespective of this the offers do not make clear all the facts which would be necessary to show that the plaintiff ought to be now accountable to Phillips or his representative for the amount which was charged against him in the final settlement of the accounts of the firm of Lyon, Shorb & Co. If there was a loss on the bonds delivered to the firm it is not disclosed by the offer whether the plaintiff should be accountable for the loss. We think it incumbent upon the defendants to exhibit in their offer every fact necessary to establish the relevancy of the testimony proposed to be given. It is impossible for us to know under these offers what equities between the partners may have determined the liability of Phillips to his firm in reference to these matters.

*Twenty-seventh, thirty-first, thirty-second and thirty-third assignments.* All of these offers fail to connect with the bonds specifically charged against Phillips, and no offer is made to connect the proposed proof with them by other testimony.

*Twenty-eighth assignment.* This offer contains no extracts from the books, no statement of their contents, no particular entries and no description of the books except that they were books of Wm. Phillips, President of the A. V. R. R. Co., kept by his secretary, who is since dead; the books are not before us, and it is therefore impossible for us to say that either the books themselves or entries in them were competent testimony. The court below after inspection of them decided them to be incompetent and we cannot say this was error.

*Twenty-ninth and forty-sixth assignments.* We fail entirely to see the propriety of the inference which the defendants propose to draw from the proof offered under these assignments, or how it could operate to relieve Mr. Phillips from the charge against him for the missing bonds and coupons.

*Thirty-fourth assignment.* It does not appear that the item of $527.20 constituted any part of the judgment against Phillips and therefore the proof offered would not affect the judgment. As an independent transaction the check had been introduced and explained by John Ballentine, the defendants' witness on cross-examination, who showed that Phillips had been repaid. With no other explanatory testimony the check itself was irrelevant.

*Thirty-fifth to forty-third assignments, both inclusive.* The difficulty with all of these offers is that it had already been shown by the testimony of Ballentine or by the exhibits in evidence, that Mr. Phillips had received credit for the various items and there was no other evidence respecting them in the case. There was no other explanatory testimony offered with them, and without some such evidence there was nothing to impeach the fact of the credits and repayments.

*Forty-fourth assignment.* The fact that Phillips accounted for the bonds mentioned in the receipt is no proof that he accounted for other bonds which were missing. It does not appear that he was charged with the bonds mentioned in the receipt and the offer was therefore irrelevant.

*Forty-fifth assignment.* The same is true as to the proof offered under this assignment. Proof that Phillips returned certain bonds which he held is no proof that he accounted for other bonds not returned.

*Forty-seventh assignment.* It is not in any manner explained either in the offer or anything said in support of it how this proposed evidence could show that Mr. Phillips was wrongly charged as to any item which went to make up the judgment rendered against him, and in the absence of such explanation we can not say the court was in error in rejecting the offer.

*Forty-eighth, forty-ninth and fiftieth assignments.* As there was no evidence that Phillips ever conveyed title for any part

[Buck *v.* Commonwealth.]

of the Templeton tract, to the plaintiff, he was certainly chargeable with the $16,000 of their bonds which he had received to be applied to payment for the land, and he should be surcharged with the $9,375 with which he had been credited as paid for the company on the purchase. The court would have been justified in giving a binding instruction to the jury to this effect.

Judgment affirmed.